UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -
CIANDRE DAVIS,

        Plaintiff,

v.                                                 9:16-cv-1474
                                                 (TJM/ATB)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES,
NURSE PARKER, NURSE COLVIN, and JOHN
and/or JANE DOES 1,2, 3, etc.; Lakeview Shock
Incarceration Correctional Facility Medical
Officials,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## DECISION and ORDER

Before the Court is Defendants' partial motion to dismiss the Plaintiff's Complaint. See dkt. # 15. The parties have briefed the issues and the Court has determined to resolve the motion without oral argument.

**I.    BACKGROUND**

Plaintiff filed the instant Complaint on December 9, 2016. See dkt. # 1. At the times relevant to the action, Plaintiff was incarcerated at Lakeview Shock Incarceration Correctional Facility ("Lakeview") in the Village of Brocton, New York. Id. at ¶ 7. That facility, administered by Defendant New York State Department of Corrections and Community Supervision ("DOCCS"), houses a program where inmates "are held in military style, boot camp confinement." Id. at ¶ 13. Inmates are required to engage in an intensive exercise program, and can be removed from the program for failing to

comply with any part of the program. Id. at ¶¶ 14-15. An inmate removed from that shock program is transferred to another DOCCS facility to serve out the rest of her sentence. Id. at ¶ 16. Time spent at Lakeview is not credited towards the inmate's term. Id.

Plaintiff, who entered the facility in February 2015, was informed by a Lakeview doctor that she needed to undergo an emergency Loop Electrosurgical Excision Procedure ("LEEP"). Id. at ¶¶ 17-18. That procedure cuts away tissue on a woman's cervix as a preventative for cancer. Id. at ¶ 19. The doctor told Plaintiff she would contract cervical cancer within two years if she failed to have the LEEP procedure. Id. at ¶ 20.

Plaintiff had the surgery on November 23, 2015. Id. at ¶ 21. LEEP patients are told to limit their physical activity, with no heavy lifting or strenuous activity, for weeks after the procedure. Id. at ¶ 22. They are also told to contact their physician immediately if they experience heavy bleeding. Id. at ¶ 23.

Plaintiff stayed overnight in the hospital after her surgery and returned to Lakeview on November 24, 2015. Id. at ¶ 24. Upon her return, Plaintiff was excused for one day from Lakeview's activity program and heavy lifting. Id. at ¶ 25. Plaintiff's doctor had recommended a much longer recovery period. Id.

Plaintiff began to hemorrhage blood from her vagina during a December 11, 2015 class at Lakeview. Id at ¶ 26. The bleeding was profuse and caused her pants to stain. Id. at ¶ 27. Blood pooled on her chair and on the floor underneath that chair. Id. Plaintiff's teacher sent her to the infirmary immediately. Id. at ¶ 28.

When she arrived at the infirmary, Plaintiff informed the staff, including

Defendants Nurse Parker and Nurse Colvin, about her bleeding. Id. at ¶ 29. She also informed them she felt light-headed. Id. Plaintiff told nurses she was anemic and therefore needed to go to the emergency room. Id. Plaintiff alleges that the nurses were aware of her anemia as she was receiving medical treatment for the condition. Id. at ¶ 30. Plaintiff also alleges that Defendants knew she had undergone the LEEP procedure. Id. at ¶ 31.

Nurse Parker ignored Plaintiff's request to be taken to the hospital–instead, she told Plaintiff "you look fine to me," handed her a change of pants, and gave her a handful of sanitary pads to deal with the bleeding. Id. at ¶ 32. Parker then ordered Plaintiff back to her class, giving her a note that stated she could use the bathroom to treat her bleeding without permission from the instructor. Id. at ¶ 33. Plaintiff took the note and returned to the classroom, where she soon began bleeding again. Id. at ¶¶ 34-35. The instructor ordered Plaintiff back to the infirmary. Id. ¶ 36.

At the infirmary, Defendant Colvin greeted Plaintiff by yelling at her, asking "[w]hat the hell are you doing back here?" Id. at ¶ 37. Plaintiff, who was crying, begged Colvin to send her to the hospital. Id. at ¶ 38. Defendant Colvin ordered Plaintiff to an examination room and told her to pull down her pants and underwear. Id. at ¶ 39. Colvin did not close the door, and staff members and other inmates in the infirmary were exposed to Plaintiff's vagina. Id. at ¶ 40. After Colvin's examination, she handed Plaintiff a stack of sanitary pads and put her in small private room in the infirmary. Id. at ¶ 41. Colvin told Plaintiff to monitor her use of sanitary pads–Plaintiff used one pad every ten minutes. Id. at ¶¶ 42-43. Defendants did not check back in on Plaintiff for more than twelve hours. Id. at ¶ 44.

At around midnight on December 12, 2015, Plaintiff passed out while she was trying to use her private room's toilet.¹ Id. at ¶ 45. She fell, hit the floor, and opened a large cut on her chin. Id. at ¶ 46. Plaintiff also bit through the bottom of her upper lip. Id. She awoke in a large pool of her own blood. Id. at ¶ 47. Plaintiff tried to ring the call bell in her room, but found it out of service. Id. at ¶ 48. Instead, she began to scream and kick the door in an effort to call the infirmary staff. Id. at ¶ 49.

Plaintiff alleges that "[w]hen a[n] infirmary staff member entered the room, she began screaming."² Id. at ¶ 50. Plaintiff passed out again when the staff member appeared. Id. at ¶ 51. Lakeview staff transported Plaintiff to the hospital; she received two blood transfusions and nine stitches for the wounds to her face. Id. at ¶ 52.

The doctor who had performed the LEEP procedure was at the hospital when Plaintiff arrived. Id. at ¶ 53. He told Plaintiff that Lakeview staff should have called him immediately when she began hemorrhaging. Id. at ¶ 54. He said that Plaintiff may have died if she had lost any more blood. Id. at ¶ 55. He informed Plaintiff later that she would need plastic surgery to repair the scars on her chin and lip. Id. at ¶ 56.

Plaintiff returned to Lakeview on December 12, 2015. Id. at ¶ 57. Two days later, a member of the Lakeview staff informed Plaintiff that she would be disqualified from the shock program because of low blood levels. Id. at ¶ 58. Plaintiff was due to complete the program in less than three months. Id. The prospect of being required to

---

¹The Complaint lists the date as in 2016, but the context makes clear that the events occurred in December 2015.

²The Court is unable to ascertain whether the "she" who began screaming upon entering the room was the Plaintiff or the staff member.

4

serve out her full sentence in a state correctional facility caused Plaintiff severe anxiety and sleeping difficulties. Id. at ¶ 59. Plaintiff also alleges that Lakeview staff members threatened to retaliate against her if she filed a lawsuit. Id. at ¶ 60.

Plaintiff's Complaint raises seven causes of action. The first cause of action, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants Colvin, Parker, and unnamed Lakeview medical officers violated Plaintiff's Eighth and Fourteenth Amendment rights by deliberate indifference to a serious medical need. Plaintiff's second cause of action raises a claim against DOCCS for violating the Rehabilitation Act of 1973. Count Three raises a claim for medical malpractice against Colvin, Parker, and the unnamed Lakeview medical officers who treated her. Count Four alleges intentional infliction of emotional distress against those same defendants. The fifth Count contends that those same Defendants were negligent in their care for the Plaintiff. Count Six is a claim for negligent infliction of emotional distress against the individual defendants. Count Seven alleges that DOCCS is liable through *respondeat superior* for the actions of its employees acting within the course and scope of their employment.

## II.   LEGAL STANDARD

Defendants have filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS

Defendants seek dismissal of all claims in the Complaint except for Plaintiff's first cause of action alleging an Eighth Amendment violation against the individual Defendants. The Court will address each of the Defendants' claims in turn.

### A.   Section 1983 Claims Against DOCCS

While Defendants do not seek dismissal of the Section 1983 claims against the individual Defendants, they argue that any Section 1983 claims against DOCCS must be dismissed. DOCCS is an agency of New York State, and New York enjoys sovereign immunity against such claims. Plaintiff responds that she did not raise a Section 1983 claim against DOCCS. Having examined the Complaint, the Court agrees. Plaintiff has not raised a Section 1983 claim against DOCCS. The motion will therefore be granted as unopposed in this respect.[3]

### B.   Rehabilitation Act

Defendants next claim that Plaintiff has failed to state a claim under Section 504

---

[3]Plaintiff could not bring such a claim in any case, as "[a] state may be sued in federal court only when it consents in express terms to such a suit or when Congress, pursuant to a valid exercise of its power, unequivocally states its intent to abrogate the states' immunity." New York City Health & Hosp. Corp. v. Perales, 50 F.3d 129, 134 (2d Cir. 1995). This immunity extends to state agencies as well. U.S. v. City of Yonkers, 96 F.3d 600, 619 (2d Cir. 1996).

of the Rehabilitation Act ("RA"). "Section 504 of the Rehabilitation Act protects any 'otherwise qualified individual' from 'be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination' under specified programs 'solely by reason of her or his disability.'" Grune v. Rodriguez, 178 F.3d 27, 34 (2d Cir. 1999) (quoting 29 U.S.C. § 794(a)).  In this context, proof that Defendants violated Section 504 of the RA requires a plaintiff to "show: (1) that he has a disability for purposes of the Rehabilitation Act; (2) that he was 'otherwise qualified' for the benefit that has been denied; (3) that he has been denied benefits 'solely by reason' of his disability; and (4) that the benefit is part of a 'program or activity receiving Federal assistance.'" Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998) (quoting Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir. 1995)).  "Three theories" exist by which a plaintiff can make out such a claim: "'(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003)).

Plaintiff alleges that she has made out all of the elements of a Rehabilitation Act claim.  She argues that cancer is a disability within the meaning of the Act.  She insists that she was qualified for the benefit she was denied, an exemption from strenuous activity while she healed from surgery.  The prison discriminated against her because of this disability by failing to grant an exemption without a good reason.  Finally, Plaintiff argues that, as a public facility receiving federal funding, Lakeview was subject to the Act's requirements.  Defendants contend that Plaintiff has failed to allege any but the first element of a Section 504 claim, and that her claim instead seeks to recover against

DOCCS for failing to provide the medical treatment she preferred. Plaintiff denies that her claim is related to the adequacy of medical treatment, but instead claims "she was not given a reasonable accommodation, temporary exemption from the shock program's strenuous physical activities, in order to provide adequate time for her to recover from the LEEP procedure."

In her Complaint, Plaintiff alleges that:

68. Plaintiff is an individual with a disability as recognized under the Rehabilitation Act of 1973, as she is anemic and susceptible to cervical cancer.
69. Plaintiff was denied the benefits of medical treatment at Lakeview for her anemic condition and post-LEEP side effects.
70. Plaintiff was also denied adequate recovery time in relation to her LEEP procedure due to Lakeview's regimented, boot camp like nature. Upon information and belief, at a non-shock DOCCS facility, plaintiff would have received a medical excuse from any excessive physical activity following her LEEP procedure.
71. Plaintiff was excluded from the benefits of adequate medical treatment and an exemption from physical activity–specifically, from heavy lifting and strenuous exercises–as a result of her disability.
72. DOCCS and Lakeview receive federal financial assistance.
73. But for DOCCS failure to establish a policy that allows shock program participants who recently underwent a medical procedure an exception from participating in strenuous activity and/or heavy lifting, Plaintiff would not have experienced complications from her LEEP procedure, which resulted in Plaintiff's hemorrhaging, and the complications that arose when defendants treated her request for medical assistance with deliberate indifference.
74. But for Defendants failure to provide Plaintiff with proper treatment for her disabilities, Plaintiff would not have suffered the injuries alleged herein.
75. Defendant's failure to accommodate Plaintiff's disability was the proximate cause of her injury.

Complt. at ¶¶ 68-75.

The Court reads these allegations to attempt to state a claim that Plaintiff was disabled due to her medical condition and the aftermath of the treatment of that condition–the LEEP procedure. The Complaint also alleges that DOCCS is the

8

recipient of federal funding. She has thus pled the first and fourth elements of an RA claim. As to the second and third element of that claim, however, Plaintiff's allegations are insufficient. She alleges that she was denied a benefit available to other inmates at Lakeview, but she defines that benefit as "the benefits of medical treatment at Lakeview for her anemic condition and post-LEEP side effects." Id. ¶ 69. She also alleges that she was "excluded from the benefits of adequate medical treatment and an exemption from physical activity–specifically, from heavy lifting and strenuous exercises–as a result of her disability." Id. at ¶ 70. The injuries she claims as a result of her exclusion from "adequate medical treatment" are the bleeding and other injuries described above. Id. at ¶¶ 71-72. In other words, Plaintiff complains that Defendants violated the RA by failing to provide her with adequate medical treatment.

Courts in this circuit have found, however, that "'section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question.'" Cushing v. Moore, 970 F.2d 1103, 1109 (2d Cir. 1992) (quoting United States v. University Hospital, 729 F.2d 144, 156 (2d Cir. 1984)). Moreover, since the statute applies to situations where a plaintiff is "otherwise qualified" for the program in question, that "phrase . . . is geared toward relatively static programs or activities such as education, employment, and transportation systems." University Hospital, 729 F.2d at 156 (internal citations omitted). "Otherwise qualified," therefore, "cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." Id. Courts have therefore dismissed Rehabilitation Act claims based on medical treatment decisions. See, e.g., McGugan v. Aldana-Bernier, No. 11cv342,

9

2012 U.S. Dist. LEXIS 60340 at *19-20 (E.D.N.Y. Apr. 30, 2012) ("defendant's assessment of plaintiff's potential dangerousness and decision to involuntarily commit plaintiff are medical treatment decisions and are directly related to defendant's alleged perception that plaintiff suffered from a mental illness" and plaintiff therefore cannot state a claim under the Act); Flight v. Gloeckler, 878 F.Supp. 424, 427 ("The Second Circuit has held that Section 504 does not apply to medical treatment cases where the handicap itself gives rise to, or at least contributes to, the need for services.") (internal citations omitted); Emerson v. New York State Dep't of Corr. Servs., No. 08cv824, 2011 U.S. Dist LEXIS 116377 at *63-64 n.40 (N.D.N.Y. Sept. 9, 2011) ("[T]he ADA and RA afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.").

     Because Plaintiff attempts to state a claim under the RA based on her complaints about the adequacy of her medical treatment, the Court will grant the motion to dismiss. The Court notes that Plaintiff has abandoned this argument concerning medical treatment in her briefing. Instead, she appears to argue that the Defendants failed to provide her with a requested accommodation for her disability–excusing her from the physical activity requirements of the Lakeview program.[4] As laid out above, however, Plaintiff's RA claim is not based on such conduct, but on the medical treatment she received. In evaluating a pleading, the Court is required to accept the allegations in the Complaint as true. The Court is not required to substitute allegations

---

[4] The Court offers no opinion on the ability of such a claim to survive a motion to dismiss.

10

that would better support the Plaintiff's claims when Plaintiff raises them in her briefing. Plaintiff has failed to allege facts making plausible her right to relief in the Complaint, and the Court must grant the motion to dismiss. Because Defendant does not appear to dispute that Plaintiff was disabled or that Lakeview received federal funding, and because there may be facts in Plaintiff's possession which would allow her to plausibly allege a right to relief, the Court will dismiss her Rehabilitation Act claim with leave to re-plead.

### C. State-Law Claims

Defendants next argue that Plaintiff's state-law claims must be dismissed. The claims against the individual defendants, they contend, are barred by Section 24 of the New York State Correction Law. Defendants also insist that Claims brought against DOCCS pursuant to a *respondeat superior* theory are barred by the doctrine of sovereign immunity. Plaintiff responds that Section 24 of the New York State Correction Law is unconstitutional and cannot be enforced. Plaintiff also argues that, even if the Corrections Law applies, the Complaint does not allege that the Defendant nurses are DOCCS employees. If the nurses are not DOCCS employees they are not subject to the Correction Law's bar to suit. Plaintiff does not address Defendants' argument concerning sovereign immunity, and the Court will assume that Plaintiff concedes that point.[5]

---

[5] Plaintiff could not sue DOCCS–a state agency–in any case. See Baker v. Coughlin, 77 F.3d 12, 15 n.3 (2d Cir. 1996) ("the Eleventh Amendment independently precludes suits against states in federal courts."). Eleventh Amendment immunity "presupposes: (1) that each state is a sovereign entity in our federal system; and (2) that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." Close v. New York, 125 F.3d 31, 36 (2d Cir. 1997).

New York law clearly prohibits suits brought in state courts against corrections officers for claims arising out of their employment. "New York Corrections Law § 24 precludes 'the assertion of claims against corrections officers in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out of the acts committed by corrections officers within the scope of their employment.'" Lopez v. Whitmore, 2015 WL 4394604, at *12 (N.D.N.Y. July 16, 2015)(quoting Baker, 77 F.3d at 15); see N.Y. Correct. Law § 24.[6] The statute "provides that New York courts lack jurisdiction over [state law] claims for money damages brought against DOCS . . . officials in their personal capacities arising from conduct within the scope of their employment." Hassell v. Fischer, 2015 U.S. Dist. LEXIS 43367, at *34 (S.D.N.Y. Apr. 1, 2015)

Plaintiff contends that the law is unconstitutional, citing to a 2009 Supreme Court

---

Such immunity "is not absolute." Id. Congress can "abrogate a state's immunity through a statutory enactment," and "a state may waive its immunity and agree to be sued in federal court[.]" Id. Neither situation applies here, and claims against DOCCS are barred by state sovereign immunity.

[6]In pertinent part, N.Y. Corrections Law § 24 provides:

> 1. No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.

12

decision. "In 2009, the United States Supreme Court held that [N.Y. Correction Law § 24], to the extent that it relegates to the New York State Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, is inconsistent with the Supremacy Clause and is, therefore, unconstitutional." Joy v. New York, 2010 WL 3909694, at *4 (N.D.N.Y. Sept. 30, 2010) (citing Haywood v. Drown, 556 U.S. 729, 129 S. Ct. 2108, 173 L. Ed.2d 920 (2009)). In reaching this decision, "[t]he *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear section 1983 actions against all types of state actors, 'is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy.'" Id. (quoting Haywood, 129 S .Ct. at 2117 (footnote omitted)). However, the *Haywood* decision found Corrections Law § 24 to be in violation of the Supremacy Clause only with respect to claims brought under section 1983. Id. (citing Haywood, 129 S .Ct. at 2117–18). "While the Supreme Court concluded that section 24 violates the Supremacy Clause as it applies to claims brought under section 1983, it did not find the statute unconstitutional when applied to claims arising under New York State law." Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision, 2016 WL 5394752, at *32 (N.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016); see Small v. N.Y., 2017 WL 1176032, at *7, n. 5 (W.D.N.Y. Mar. 30, 2017)  (N.Y. Correction Law § 24 "bars only those claims brought under state law, not federal claims brought under § 1983.") (citing Haywood, 556 U.S. at 740, 129 S. Ct. at 2117). "After *Haywood*, the courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear

13

pendent state-law claims against DOCS officials." Joy, 2010 WL 3909694, at *4 (collecting cases). Plaintiff's position that the Court may not enforce the statute because it is unconstitutional under Haywood is clearly misplaced.

Plaintiff also argues that the Court should find the statute unconstitutional because the Corrections Law prevents the Court from exercising its supplemental jurisdiction. This argument is unpersuasive. "It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law." Francis v. Fiacco, 2016 WL 3448617, at *3–4 (N.D.N.Y. June 20, 2016)(citing, *inter alia*, Baker, 77 F.3d at 15 (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims")). "Section 24 of New York Correction Law governs substantive rights; it is not procedural." Id. (citing Baker, 77 F.3d at 15). Because a state court would dismiss the state law claims against the individual Defendants, this Court must also dismiss these claims. In doing so, the Court sees no constitutional deprivation arising from the Supremacy Clause, see Rucano v. Koenigsmann, 2014 U.S. Dist. LEXIS 44085, *16 (N.D.N.Y. March 3, 2014), *adopted by, dismissed in part by* 2014 U.S. Dist. LEXIS 44637 (N.D.N.Y. March 31, 2014) ("[c]laims brought pursuant to state law do not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear pendent state law claims.")(citations omitted); May v. Donneli, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) (Sharpe, J., adopting report and recommendation by Treece, M.J.) ("A claim brought pursuant to state law does not

14

implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear [a] pendent state law claim."), and does not read the *Haywood* decision (or any other case cited by plaintiffs) as defining a constitutional deprivation when a federal court applies applies New York Corrections Law § 24. Contrary to plaintiffs' contention, N.Y. Corrections Law § 24 does not require the Court to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), see Rounds v. Thompson, 2013 WL 3187074, at *4 (N.D.N.Y. June 20, 2013)("[C]ourts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24.""), but rather limits the Court's subject matter jurisdiction over certain state law claims against a class of state actors. See Jackson v. Yando, 2016 WL 6267967, at *2 (N.D.N.Y. Oct. 26, 2016) (After finding that N.Y. Corrections Law § 24 applied, the court dismissed Plaintiff's state law claims for lack of subject matter jurisdiction.). The statute does not "disempower[] the federal judiciary's supplemental jurisdiction authority to hear state law claims" as plaintiffs contend, but rather removes from federal court jurisdiction a certain class of state law claims against particular state actors. Plaintiff's right to pursue all of her claims are not inhibited, and she has failed to supply authority supporting the proposition that New York Corrections Law § 24 works a constitutional violation on her.

      Plaintiff contends that, even if Corrections Law § 24 applies, the Complaint does not allege that the defendant nurses are DOCCS employees, and that the statute

therefore does not apply.

This argument is easily rejected. Plaintiff's Complaint alleges in relevant part that:

> 9. Defendants Nurse Parker, Nurse Colvin and Lakeview Shock Incarceration Correctional Facility Officials John and/or Jane Does 1, 2, 3, etc. (collectively "Lakeview Medical Officials") were medical and/or mental health care providers employed by DOCCS who were responsible for the medical care of people incarcerated at Lakeview Shock Correctional Facility ("Lakeview") . . .
> 10. Upon information and belief, defendants Park, Colvin, and "JOHN and/or JANE DOES" 1, 2, 3, etc. are still DOCCS employees.

Complt. at ¶¶ 9-10. Since Section 24 of the Corrections Law applies to "any officer or employee of the department," Plaintiff's allegations demonstrate that she could not prevail on this claim.[7] The Court will therefore grant the motion to dismiss in this respect as well.

## IV. CONCLUSION

For the reasons stated above, Defendants' partial motion to dismiss, dkt. #15, is hereby **GRANTED** with prejudice except as to Plaintiff's Rehabilitation Act claim. Plaintiff mail file an amended complaint within 21 days of the date of this order. Failure to file an amended complaint will cause the case to go forward on the sole claim that remains in Plaintiff's original Complaint after this decision: her Section 1983 medical indifference claim against the individual Defendants.

**IT IS SO ORDERED**.

---

[7]Plaintiff is reminded that the operative pleading here is the Complaint. The Court accepts all well-pleaded facts in the Complaint as true, and Plaintiff's counsel does not improve his credibility with the Court by making arguments that contradict the facts alleged in the Complaint.

Dated: July 13, 2017

_____
Thomas J. McAvoy
Senior, U.S. District Judge

17