**UNITED STATES DISTRICT COURT**
**NORHTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------------X

CIANDRE DAVIS,

        Plaintiff,

 -against-

THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION SERVICES; NURSE PARKER; NURSE COLVIN; NURSE HAYDEN; and NURSE PRACTITIONER WILCOX,

        Defendants.

-----------------------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

16-cv-1474 (TJM)(ATB)

  Plaintiff CIANDRE DAVIS, by her attorneys, Beldock Levine & Hoffman LLP, as and for her second amended complaint against the defendants, alleges as follows:

## PRELIMINARY STATEMENT

  1. This civil rights action seeks redress under 42 U.S.C. § 1983 for injuries plaintiff suffered from the unconstitutional and unlawful conduct of Defendants.

  2. Plaintiff seeks redress for substantial injuries she suffered as a result of the defendants' deliberate indifference to her injuries and the pain and suffering she continues to experience. Plaintiff seeks (i) compensatory damages for physical, psychological, and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

  3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

4. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

5. Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as all Defendants are all residents of this state and this is the judicial district in which the New York Department of Corrections and Community Supervision maintains their headquarters.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

## THE PARTIES

7. Plaintiff Ciandre Davis is a United States citizen, currently residing in the City and County of Albany and the State of New York. At all times relevant to this complaint, plaintiff was incarcerated at Lakeview Shock Incarceration Correctional Facility, located in the Village of Brocton, Chautauqua County and the State of New York.

8. The NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS") is a department of the State of New York with its central office in Albany, New York. DOCCS is responsible for the confinement and habitation of incarcerated individuals held in correctional facilities throughout the State. DOCCS receives federal funding.

9. Defendants Nurse Parker, Nurse Colvin, Nurse Hayden, and Nurse Practitioner Wilcox were medical and/or mental health care providers employed by DOCCS who were responsible for the medical care of people incarcerated at Lakeview Shock Incarceration

Correctional Facility ("Lakeview"). The Lakeview Medical Officers participated in, had knowledge of, and/or failed to intervene to remedy the denial of adequate medical care to plaintiff. Their duties included, but were not limited to, caring for all patients in their assigned areas of Lakeview, including, but not limited to, cell visits, physical and psychological examinations, identification of acute and chronic conditions, design and implementation of appropriate plans to facilitate care, provision of medications, provision of psychiatric and/or psychological counseling, coordination of treatment with other providers at Lakeview Correctional Facility, direct oversight and supervision of medical staff, and/or provision of emergency medical care. At all relevant times herein, the Lakeview Medical Officials were acting under color of state law and within the scope of their capacities as agents, servants, employees, and/or contracted personnel of defendant DOCCS. Their responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of New York State correctional facilities, including DOCCS policies, procedures, directives, and protocols, in additional to all relevant local, state, and federal statutes and regulations. The Lakeview Medical Officials are sued in their individual capacities.

10. Upon information and belief, defendants Parker, Colvin, Nurse Hayden, and Nurse Practitioner Wilcox are still DOCCS employees.

11. At all times relevant herein, defendants Parker, Colvin, Nurse Hayden, and Nurse Practitioner Wilcox acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the State of New York and/or DOCCS, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the State and/or DOCCS.

12. At all times relevant herein, defendants Parker, Colvin, Nurse Hayden, and Nurse Practitioner Wilcox violated clearly established rights and standards under the Eighth and Fourteenth Amendments to the United States Constitution, of which a reasonable officer in their circumstances would have known.

## STATEMENT OF FACTS

13. Lakeview Shock Incarceration Correctional Facility ("Lakeview") is a DOCCS facility that administers a program in which incarcerated people are held in military style, boot camp confinement.

14. The shock program includes an intensive calisthenics program, which requires incarcerated people to perform daily aerobic and anaerobic exercises.

15. Upon information and belief, shock program participants can be removed from the program if they fail to comply with every aspect of the program.

16. Upon information and belief, if a shock program participant is removed from the program they are required to serve their sentence at a DOCCS facility and the time they spent at the shock facility is not counted toward their prison sentence.

17. Plaintiff entered Lakeview in February 2015.

18. In November 2015, a Lakeview doctor insisted that plaintiff undergo an emergency Loop Electrosurgical Excision Procedure ("LEEP").

19. LEEP is a procedure that cuts away cells and tissues on women's cervix in order to prevent cervical cancer.

20. The Lakeview doctor insisted that, in sum and substance, if plaintiff did not have the LEEP procedure immediately she would have cervical cancer within two years.

4

21. On November 23, 2015, plaintiff underwent an emergency LEEP procedure at Brooks Memorial Hospital ("Brooks").

22. Women who undergo LEEP procedures are instructed to limit their physical activity, including no strenuous activity or heavy lifting, in the days and weeks after the procedure.

23. Women who undergo a LEEP procedure are instructed to contact their health care provider immediately if they experience heavy bleeding.

24. Plaintiff was kept at Brooks overnight for observation and returned to Lakeview on November 24, 2015.

25. Upon plaintiff's return to Lakeview, she was excused from the shock program's strenuous activity and heavy lifting for only one day, despite medical recommendations for a longer recovery time period.

26. Upon information and belief, Lakeview officials knew that plaintiff's doctor recommended that she be excused from the shock program's strenuous activity and heavy lifting.

27. As a result of the LEEP procedure, plaintiff experienced pain and discomfort after she was forced to return to the shock program's strenuous activity and heavy lifting.

28. Plaintiff reported the pain and discomfort that she experienced to Lakeview officials, but she was not provided the reasonable accommodation of excusal from the shock program's strenuous activity and heavy lifting.

29. Upon information and belief, plaintiff was denied the reasonable accommodation of excusal from the shock program's strenuous activity and heavy lifting because of her disability.

30. Upon information and belief, plaintiff would have been excused from strenuous activity and heavy lifting at other DOCCS facilities as a result of a medical condition.

31. On the morning of December 11, 2015, at approximately 9:00 AM, while plaintiff was in her Alcohol Substance Abuse Treatment ("ASAT") class, she began hemorrhaging from her vagina.

32. Plaintiff's bleeding was so perfuse that it immediately caused stains on her pants and blood to pool on her chair and the floor underneath her chair.

33. Plaintiff's ASAT teacher saw that she was bleeding and immediately told her to go to the infirmary.

34. Plaintiff entered the infirmary, crying hysterically, and told the staff, which included, upon information and belief, defendant Parker and defendant Colvin, that she was hemorrhaging blood from her vagina, that she felt light-headed, and that, because she was anemic, she needed to go to the emergency room.

35. Plaintiff had previously been given medication for anemia at Lakeview and, upon information and belief, defendant Parker and defendant Colvin knew that she suffered from this condition.

36. Upon information and belief, defendants knew that plaintiff had undergone a LEEP procedure approximately two weeks earlier.

37. Upon information and belief, defendants do not have specific training and/or experience in OB/GYN medical practices.

38. Defendant Parker responded, in sum and substance, "You look fine to me" and handed plaintiff a change of pants and a handful of sanitary pads for the bleeding.

39. Defendant Parker consulted with defendant Wilcox about plaintiff's serious medical condition.

40. Defendants Parker and Wilcox ignored plaintiff's serious medical condition and agreed that plaintiff did not require medical care.

41. By failing to treat plaintiff, defendants Parker and Wilcox were deliberately indifferent to her serious medical condition.

42. Defendant Parker ordered plaintiff back to her ASAT class and gave her a note stating that she did not need permission from her instructor to use the restroom in order to attend to the bleeding.

43. Plaintiff took the note, obeyed defendant Parker's order, and returned to the classroom.

44. Within minutes of her return to the ASAT class, plaintiff's chair and pants were again covered in blood as a result of her vaginal bleeding.

45. Plaintiff's classroom instructor noticed that the hemorrhaging did not stop and ordered plaintiff to go back to the infirmary.

46. Upon returning to the infirmary, Nurse Colvin saw plaintiff and yelled, in sum and substance, "what the hell are you doing back here."

47. Plaintiff, crying hysterically, pled with defendant Colvin to send her to the hospital because she felt as though she was going to pass out.

48. Defendant Colvin ordered plaintiff into an examination room and told her to pull down her pants and underwear.

49. Defendant Colvin did not close the examination room door and plaintiff's vagina was exposed to everyone inside the infirmary, including staff members and other incarcerated people.

50. After being examined by defendant Colvin, plaintiff was handed a stack of sanitary pads and was locked in a small, private room within the infirmary.

51. Defendant Colvin told plaintiff to monitor the number of sanitary pads she was using.

52. Plaintiff used approximately one sanitary pad every ten minutes.

53. Defendants did not check on plaintiff for over twelve hours.

54. By locking plaintiff in the private room, defendants prevented plaintiff from accessing programs or activities.

55. At approximately midnight on December 12, 2016, plaintiff passed out when attempting to use the private room's toilet.

56. As plaintiff hit the floor she opened a large cut on her chin and bit through the bottom of her lip.

57. When plaintiff awoke, she was lying in a pool of her own blood.

58. Plaintiff attempted to ring the emergency bell in the private room, but the bell was out of service

59. Plaintiff started screaming and kicking the door in an effort to attract the attention of the infirmary staff.

60. When an infirmary staff member, who upon information and belief was defendant Hayden, entered the room, she began screaming.

61. In ignoring plaintiff's serious medical condition and locking plaintiff in a private room within Lakeview's infirmary, defendants Parker, Colvin, Hayden, and Nurse Practitioner Wilcox were deliberately indifferent to plaintiff, which resulted in her falling and incurring the injuries described above.

62. Following plaintiff's fall, defendant Hayden failed to provide appropriate emergency care to plaintiff, including, *inter alia*, spine immobilization with cervical collar and backboard and Emergency Medical Service transportation to the hospital, which showed a callous disregard for plaintiff's welfare and could have resulted in her death or severe medical complications.

63. Plaintiff passed out again after the staff member entered the room.

64. Plaintiff was rushed to Brooks hospital by Lakeview staff, where she received nine stiches for the open wounds on her face and was given two blood transfusions.

65. The doctor who performed plaintiff's LEEP procedure was on duty when she arrived at Brooks and treated Plaintiff.

66. The doctor told plaintiff that the Lakeview medical staff should have called him immediately after she began hemorrhaging.

67. The doctor also stated that plaintiff could have died if she had lost any more blood.

68. The doctor later told plaintiff that she will need cosmetic surgery in order to repair the scars on her chin and lip.

69. Plaintiff was sent back to Lakeview the afternoon of December 12th.

70. On December 14th, plaintiff was told by a Lakeview medical staff member that her blood levels were low and that she may be disqualified from the shock program, less than three months before her sentence was to conclude.

71. Plaintiff began to experience severe anxiety and developed sleeping problems at the prospect of being disqualified from the shock program and being required to serve a full sentence in a state correctional facility.

72. Lakeview staff members threatened plaintiff with retaliation if she filed a lawsuit for her injuries.

73. As a result of defendants conduct, plaintiff was denied access to programs or activities.

74. As a result of the defendants' conduct, plaintiff sustained loss of liberty, emotional and psychological pain, embarrassment, humiliation, and deprivation of her constitutional rights.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Individual Defendant Officers' Violations of**
**Plaintiff's Eighth and Fourteenth Amendment Rights Against Defendants**
**COLVIN, PARKER, HAYDEN, AND WILCOX**

75. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76. The acts of defendants Colvin, Parker, Nurse Hayden, and Nurse Practitioner Wilcox constituted conduct under color of state law which deprived plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States.

77. These defendants, acting under the pretense and color of law, were deliberately indifferent to the physical and emotional pain and suffering Plaintiff experienced.

78. By reason of the foregoing, these defendants deprived plaintiff of rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, including but not limited to the right to be free from cruel and unusual punishment.

79. These defendants committed the foregoing acts intentionally, willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious

indifference to the clear risk of serious injury to plaintiff that shocks the conscience. They are therefore also liable for punitive damages.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the Defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages to the extent allowable by law;

(c) attorneys' fees;

(d) the costs and disbursements of this action;

(e) interest;

(f) such other and further relief as the Court deems just and proper.

Dated: New York, NY
October 5, 2018

>BELDOCK LEVINE & HOFFMAN LLP
>99 Park Avenue, PH/26th Floor
>New York, New York 10016
>(212) 490-0400
>
>/s/
>_____
>Keith Szczepanski
>
>*Attorneys for Plaintiff Ciandre Davis*